MINNIE T. GRIPPIN, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

BESSIE G. HALL, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

ROLAND F. MYGATT, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 66345, 66825, 67564.   Promulgated December 8, 1937.

*Arthur M. Marsh, Esq.*, for the petitioners.
*D. A. Taylor, Esq.*, for the respondent.

OPINION.

SMITH: These proceedings, consolidated for hearing, are for the redetermination of deficiencies in income tax for 1929 as follows:

| Petitioner | Docket No. | Deficiency |
|---|---|---|
| Minnie T. Grippin | 66345 | $74, 585. 73 |
| Bessie G. Hall | 66825 | 7, 497. 74 |
| Roland F. Mygatt | 67564 | 13, 386. 41 |

These proceedings involve three issues, two of which are common to all three cases and the third of which is present in the Grippin and Hall cases only. The two issues in common are:

First, the value of the stock of the United Founders Corporation received by the petitioners in exchange for stock of the American Founders Corporation for the purpose of determining the gain realized on the exchange.

Second, the taxability as dividends of rights to subscribe to the common stock of the United States Electric Power Corporation received from the American Founders Corporation and United Founders Corporation.

The third issue, which is common to the Grippin and Hall cases, is whether or not amounts received by the petitioners upon the sale of such of the rights as were sold should be included in taxable income.

With respect to the first issue, the petitioners concede that the exchange gave rise to taxable income and the value of the stock on the dates of exchange is stipulated by the parties.

The petitioners, Minnie T. Grippin and Bessie G. Hall, concede that they are taxable upon the proceeds realized by them from the sale of the warrants in 1929.

The only question for the determination of the Board is the liability to income tax upon the value of the stock purchase warrants received by the petitioners from the American Founders Corporation and United Founders Corporation in 1929.

Minnie T. Grippin and Bessie G. Hall are residents of Bridgeport, Connecticut, and Roland F. Mygatt of New Milford, Connecticut.

The petitioners were stockholders in 1929 of the American Founders Corporation and of the United Founders Corporation. These corporations were investment companies engaged in 1929 in the purchase and sale of shares of stock of public utility corporations. Up to October 1929 there was a great demand on the part of investors for shares of stock in such corporations. Taking advantage of the enormous demand for such securities, the American Founders Corporation and United Founders Corporation, which owned large blocks of stock in the Standard Gas & Electric Corporation, conceived the idea

of organizing a holding public utility corporation and the sale of such shares to their stockholders. They accordingly, with other interests, organized the United States Electric Power Corporation on September 10, 1929, with a capitalization of:

    1,000,000 shares of preferred stock, no par value
    2,000,000 shares of class A stock, no par value
    20,000,000 shares of common stock, no par value

The American Founders Corporation and United Founders Corporation are hereinafter referred to as American Founders and United Founders, and the United States Electric Power Corporation as United States Electric.

The organizers of United States Electric subscribed on September 10, 1929, for the 2,000,000 shares of class A stock at $10 per share and for 1,450,000 shares of common at $13.50 per share. Out of the foregoing, 700,000 shares of class A stock and 350,000 shares of common stock were subscribed and paid for by American Founders and United Founders. Payment for the 2,000,000 shares of class A stock and 1,450,000 shares of common stock was made partly in cash and partly in Standard Gas &. Electric Corporation stock at $190 per share, which was approximately the selling price of that stock on the New York Stock Exchange at that time. Payment was made after September 14, 1929, and on or about September 17 and 19, 1929.

On September 10, 1929, American Founders, by its president, Louis H. Seagrave, offered in writing to purchase from United States Electric such number of shares of the common stock of that corporation at $13.50 per share as would be:

    * * * necessary to afford to the holders of Common Stock of the undersigned Corporation at the close of business on September 14, 1929, the right to purchase one share of such stock for each two and one-half shares held by such holder, such amount estimated to be not less than 900,000 shares nor more than 1,100,000 shares and to make payment therefor in cash at the office of the Corporation on the 17th day of September, 1929.

On the same date, United Founders, by its president, Louis H. Seagrave, likewise offered in writing to United States Electric to purchase such number of shares of its common stock at a price of $13.50 per share as would be necessary to afford to the holders of common stock of United Founders at the close of business on September 14, 1929, the right to purchase one share of such stock for each five shares held by such holder. The amount estimated to be needed was "not less than 1,100,000 shares nor more than 1,250,000 shares." Payment was to be made in cash on September 17, 1929, although payment was made partly in shares of stock of the Standard Gas & Electric Corporation at $190 per share. United States Electric common stock was listed on the Boston Stock Exchange on September

23, 1929, and from the date of listing to October 7, 1929, a total of 25,946 shares were sold at prices ranging from $32⅛ to $33⅜.

American Founders, on or about September 28, 1929, transmitted to its stockholders warrants to purchase a total of 1,017,239 shares, and United Founders on the same date transmitted to its stockholders warrants to purchase a total of 1,297,791 shares of common stock of United States Electric at $15 per share. The warrants expired on October 15, 1929. American Founders stockholders, or their assignees, by the exercise of warrants subscribed for 1,014,753 shares of United States Electric common stock, and United Founders stockholders, or their assignees, subscribed for 733,326 shares. Payment was made to the Equitable Trust Co. at $15 per share on or before October 15, 1929.

The stock purchase warrants issued by American Founders and United Founders were not listed on any exchange, but there were over-the-counter transactions in them at $6.25 per right for those issued by American Founders and at $3.25 per right for those issued by United Founders.

The parties have stipulated that the issuance of the warrants above described was at no time set up on the books of either company, either as a charge against gross profits or against surplus, or otherwise; also, that neither corporation formally or expressly declared such issue of warrants as a dividend or so entered them on their books.

The parties have stipulated as follows:

(32) The petitioners herein exercised certain of said rights so received between Sept 28 and Oct. 15, 1929, and sold certain others thereof between Sept. 28 and Oct. 15, 1929, all in the number, on the dates, and at the prices set opposite their respective names, as follows (prior to October 15, 1929):

| | Total | Exercised | Sold | Date | Sale price |
|---|---|---|---|---|---|
| BESSIE G. HALL | | | | | |
| Warrants received from American | 915 | 915 | None | | |
| Warrants received from United | 1,030 | 50 | 980 | | $3,185.00 |
| ROLAND F. MYGATT | | | | | |
| Warrants received from American | 1,345 | 1,345 | None | | |
| Warrants received from United | 2,000 | 2,000 | None | | |
| MINNIE T. GRIPPIN | | | | | |
| Warrants received from American | 4,247½ | None | 4,247½ | 10/4/29 | 28,670.63 |
| Warrants received from United | 10,500 | 10,000 | 500 | 10/4/29 | 1,750.00 |

The reasonable value of the shares of stock of the United States Electric Power Corporation in October 1929 was not in excess of $15 per share.

The respondent in his computation of the deficiencies in tax due from these petitioners for the year 1929 determined that the receipt of the rights to purchase shares of stock of United States Electric from American Founders and United Founders constituted distributions of dividends by those corporations, and that for such pur-

pose the rights received from American Founders had a value at the time of receipt of $6.25 per right, and those received from United Founders a value at the time of receipt of $3.25 per right. He has accordingly taxed the distributions as ordinary dividends at those values.

It is plain from the lengthy stipulation of facts filed by the parties in these proceedings that American Founders and United Founders conceived the idea of marketing shares of stock of United States Electric to their stockholders at a substantial profit to themselves. They acted as a mere conduit for the sale of shares of United States Electric. Each realized a profit of $1.50 per share upon the shares which it sold to its stockholders. United States Electric had no assets except the amounts paid in to that corporation by American Founders and United Founders, viz., $13.50 per share, and it is further to be observed that a large part of the payment made by those corporations to United States Electric was in the form of shares of stock of the Standard Gas & Electric Corporation at $190 per share. Through this means the two Founders corporations were enabled to dispose of large quantities of Standard Gas & Electric Corporation stock without depressing the prices of those shares on the stock exchange. We think it clear from the stipulated facts that the reasonable and fair value of United States Electric was at no time in October 1929 in excess of $15 per share. The petitioners realized no income from the receipt of the stock purchase warrants from the two Founders corporations in which they held shares. As later events show, the stockholders would have been far better off if they had never received the warrants.

In our opinion the decision upon the point in issue in these proceedings is squarely ruled by the decision of the Supreme Court in *Palmer* v. *Commissioner*, 302 U. S. 63. In its opinion the Supreme Court stated:

We think that a distribution of assets by a corporation to its stockholders by means of a sale, to which it is committed by appropriate corporate action at a time when their sale price represents their reasonable value, is not converted into a dividend by the mere circumstance that later, at the time of their delivery to stockholders, they have a higher value. The meaning of § 115 must be sought in the light of the situations to which it must be applied. * * *

The "reasonable value" of United States Electric shares of common stock in October 1929 was not in excess of $15 per share. Therefore, the petitioners received no taxable income from the receipt of the stock purchase warrants.

*Judgment will be entered under Rule 50.*